PORTER v. CHARLESTON AND SAVANNAH RY. CO.

1. PLEADING—CONSTITUTION.—It is not necessary in raising a constitutional question in a pleading to state the article and section infringed upon, but it is enough to state the principle.

2. HARMLESS ERROR.—Where a Circuit Judge erroneously refuses to consider the question of the constitutionality of an act because not properly raised, and this Court holds the act constitutional, his error is harmless.

3. COMMON CARRIERS—RAILROADS—FREIGHT—CONSTITUTION—INTERSTATE COMMERCE.—The act, 22 Stat., 443, providing a penalty on common carriers for failure to pay or to refuse to pay damage, &c., to freight within sixty days, does not conflict with those sections of the State and Federal Constitutions providing for the equal protection of the laws to all, nor with the interstate commerce clause of the Federal Constitution, or acts of Congress relating thereto.

*Colorado and Santa Fe Ry. Co.* v. *Ellis,* 165 U. S., 155, *distinguished from this.*

Before ALDRICH, J., Beaufort, June, 1901.    Affirmed.

Action by H. H. Porter against Charleston and Savannah Railway Co.   From Circuit decree sustaining judgment of magistrate for plaintiff, defendant appeals.   Circuit decree upon questions involved on appeal is as follows:

"This action comes before this Court upon an appeal, brought by defendant, from the judgment of Magistrate H. D. Burnet, rendered herein.   On page 443 of the 22d vol. of the Statutes of South Carolina, among the acts of 1897, we find an act entitled, 'An act to require all common carriers to pay all loss of or damages for loss, damage and breakage of any articles shipped over their lines, or to refuse to do so within a certain time.'  'Section 1. Be it enacted by the General Assembly of the State of South Carolina, that from and after the approval of this act, all common carriers doing business in this State shall be required to pay for, or refuse to pay for, all loss, breakage or damage from breakage, damage or loss of articles shipped over the lines of said common carriers, within sixty days from the time a claim for the said articles so lost, broken or damaged, shall be made.   Sec. 2. That in case the said common carrier shall not pay, or refuse to pay, said claim for said loss, breakage or damage, as set out in sec. 1 of this act, within the sixty days therein provided for, then the said common carrier shall be liable for the sum of fifty dollars for each offense as penalty, in addition to the amount of said loss or damage, to be collected of the claimant in any Court having jurisdiction of the same. Sec. 3.  All acts or parts of acts inconsistent with this act be, and the same are hereby, repealed.'

"The amended complaint alleges, *inter alia,* that defendant is a common carrier; that on or about the 18th day of December , 1900, defendant did receive a certain lot of plows in Charleston, S. C., to be conveyed to Ridgeland, S. C., and that the plows were damaged in transit; that plaintiff,

through his attorney, filed a claim for said damage with defendant, on the 31st day of December, 1900; and that defendant has neither paid or refused to pay said claim in sixty days after the claim was filed with defendant, and demands judgment for $50, the penalty as provided by the aforesaid act.

"The answer admits several of the allegations of the complaint, but denies the allegations of the complaint as to the alleged filing of the claim, and that it is liable for the penalty provided by the act, and for a further defense: '1. Defendant alleges that the act of 1897, referred to in the complaint, requiring railway companies to pay, or refuse to pay, claims within sixty days after presentment, and imposing a penalty of $50 for non-compliance, is unconstitutional. First, on the ground that it discriminates against common carriers, and imposes a penalty upon them for failure to pay claims, which is not imposed upon any other citizen of their State; and secondly, on the ground that it cannot apply to interstate shipments.'

"Judgment for $50, the penalty provided in the act, was rendered in the magistrate's court in favor of plaintiff and against defendant.

"Defendant's first ground of appeal reads: 'Because the act of 1897 requires of railway companies to pay, or refuse to pay, claims within sixty days after presentment, and imposing a penalty of $50 for non-compliance, is unconstitutional. First. On the ground that it discriminates against common carriers and imposes a penalty upon them for failure to pay claims, which is not imposed upon any other citizen of their State. Second. On the ground that the act cannot apply to interstate shipments.'

"This exception, like the answer, charges that the act is unconstitutional; but it does not specify what article, chapter, section or provision of the Constitution it violates. The answer alleges that the act 'discriminates' against common carriers; but makes no reference to any section of the Constitution. nor provision thereof. The answer and the excep-

tion is all that I have before me. An act of the General Assembly is presumed to be constitutional, and when it is alleged to be unconstitutional, the party attacking it should clearly and specifically allege what article and section of the Constitution prohibits or inhibits the enactment. The Courts will and must sustain the constitutionality of an act, unless the act is specifically assailed; and it appears that the act in question is in violation of some provisions of the Constitution. What provision of our Constitution does the act in question violate? Upon this subject the defendant is silent. It will be noted that the exception under consideration refers to the act of 1897 and to railroad companies. The act does not, in terms, mention railroad companies, and includes 'all common carriers doing business in the State.' Railroads are included in the term 'common carriers,' just as common carriers by water are. The answer alleges that the act is unconstitutional, because it discriminates against common carriers, and imposes a penalty upon them for failure to pay claims which is not imposed upon any other citizen of the State. The answer does not state the terms of the act in full. The common carrier is liable for the penalty if it 'shall not pay, or refuse to pay,' the claim. The act evidently is intended to prevent an evil. Counsel for plaintiff in argument asserted that the purpose and intent of the act was to break up a custom and habit of common carriers of 'pigeon-holing' such claims, and forcing claimants to wait for compensation a most unreasonable time, at the will and pleasure of the common carrier. I don't know the special evil or evils legislated against, nor is it necessary for the Court to go behind the act. Its terms are plain, easily understood, and it is the duty of the Court to enforce the law, if it is constitutional.

"Common carriers serve the public, and are an important factor in a State. In many respects they differ from other citizens or corporations. The regulation provided in the act of 1897, seems to be reasonable, proper and legal, and the penalty provided for an infraction of such regulation also

appears to be reasonable and legal.   What practical result would follow from the regulation, if its provision could not be enforced?    And I can see no objection to the method provided in the act.   The act in question does not go as far as do the acts in regard to the refusal of a railroad company to furnish to consignees itemized statements of freight charges or the settlement of freight charges.   Rev. Stat. of 1893, sections 1652, 1653 and 1654.   I might refer to other acts, but it is not necessary.   The acts have stood for years, and so far, as I am aware, have been enforced.   I can, upon this appeal, only hear such matters as were passed upon by the magistrate, and duly certified to.   Neither the answer, exceptions nor the record of the case shows ruling of the magistrate to the effect that the act is not in violation of any provision of the Constitution.   The decision rendered by the magistrate does not necessarily include any ruling upon the constitutionality of the act; because, as we have seen, the answer raised no issue such as he could pass upon.   I fail to see the effect of the exception, 'that the act cannot apply to interstate shipments.'   The act refers to all common carriers in their State.   Ridgeland is in Beaufort County, in this State.   It was there the claim was made of defendant company; it was there the freight was to be delivered; it was there the plaintiff found his plows in the depot broken; and it was there the penalty attached, if it attached anywhere.   No reason has been given in support of their exception, and as I am aware of no good reason for supporting it, it is overruled.  •If the act is in contravention of any act of Congress, or supposed to be so, the answer should, by appropriate allegations, have raised the issue. This exception is overruled. * * *"

The defendant appeals on the following exceptions:

"First.  That his Honor should have held that the act entitled 'An act to require all common carriers to pay all loss of, or damages for loss, damage and breakage of any articles shipped over their lines, or to refuse to do so within a cer-

tain time, approved 25th day of February, A. D. 1897,' was unconstitutional, null and void, and in violation of art. I., sec. 5, of the Constitution of the State of South Carolina, in that it operates to deprive common carriers of property without due process of law, and denies to them the equal protection of the law.

"Second. That his Honor should have held that the act entitled 'An act to require all common carriers to pay all loss of, or damages for loss, damage and breakage of any articles shipped over their lines, or to refuse to do so within a certain time, approved 25th day of February, A. D. 1897,' was unconstitutional, null and void, and in violation of art. XIV., sec. 1, of the Constitution of the United States, in that it operates to deprive common carriers of property without due process of law, and denies to them the equal protection of the law.

"Third. That his Honor should have held that the act entitled 'An act to require all common carriers to pay all loss of, or damage for loss, damage and breakage of any articles shipped over their lines, or to refuse to do so within a certain time, approved 25th day of February, A. D. 1897,' has no application to interstate shipments of freight by common carriers.

"Fourth. That his Honor should have held that the act entitled 'An act to require all common carriers to pay all loss of, or damages for loss, damage and breakage of any articles shipped over their lines, or to refuse to do so within a certain time, approved 25th day of February, A. D. 1897,' was unconstitutional, null and void, and in violation of art. I., sec. 5, of the Constitution of the State of South Carolina, in that it discriminates against common carriers, and imposes a penalty upon them for failure to pay claims, which is not imposed upon any other citizen of this State."

*Messrs. Mordecai & Gadsden,* for appellant, cite: *As to the constitutionality of the act:* 165 U. S., 150. *As to its infringement on interstate commerce rules:* 125 U. S., 181;

136 U. S., 313; 136 U. S., 114; 141 U. S., 47; 135 U. S., 161; 142 U. S., 339; 147 U. S., 396; 4 Wheat., 431.

*Messrs. G. M. Buckner, E. F. Warren* and *A. M. Boozer,* contra. *Mr. Boozer* cites: *Constitutional question has not been properly raised below and cannot be considered here:* 21 S. C., 421; Potter's Dwarris on Stat., 65, 60; Cooley on Con. Lim., secs. 87, 173; 15 S. C., 593; 24 S. C., 60; 42 S. C., 223; 19 Wall., 673. *As to constitutionality of the act:* 4 Wheat., 629; 27 Vt., 142; 38 S. C., 115, 291. *Question of fact cannot be reviewed in case at law on appeal:* 23 S. C., 604; 26 S. C., 296, 304; 34 S. C., 242; 35 S. C., 608; 37 S. C., 605.

March 24, 1902. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was instituted in a magistrate's court, and carried thence by appeal to the Court of Common Pleas, and from the judgment of the last mentioned Court this appeal has been taken. The object of the action was to recover the penalty imposed by the second section of an act entitled "An act to require all common carriers to pay all loss of, or damage for *loss,* damage and breakage of any article shipped over their lines, *or to refuse* to do so within a certain time," approved 25th February, 1897, 22 Stat., 443. The pleadings in the case were more formal than is usual in a magistrate's court, the plaintiff having filed a regular complaint setting forth his cause of action, to which the defendant filed a formal answer setting up two defenses; the latter being that the act of 1897, upon which the plaintiff's action was based, is unconstitutional for two reasons, which are thus stated in the answer: *"First,* on the ground that it discriminates against common carriers and imposes a penalty upon them for failure to pay claims which is not imposed upon any other citizen of this State. *Second,* on the ground that it cannot apply to interstate commerce." The case was heard by the magistrate, who rend-

ered judgment in favor of the plaintiff without in any way
alluding to the constitutional question presented by the
answer. From this judgment defendant appealed to the
Circuit Court upon the two grounds set out in the "Case,"
the two grounds upon which the first exception is based
being identical with those stated in the answer, and the
second ground of appeal, which is not involved in this
appeal, need not be stated here. The Circuit Judge rendered
judgment dismissing the appeal and affirming the judgment
of the magistrate, and from such judgment of the Circuit
Court this appeal has been taken upon the several exceptions
set out in the record. The judgment of the Circuit Judge
as it appears in the "Case" (except so much thereof as re-
lates to the second exception to the magistrate judgment),
together with the exceptions thereto, will be embraced in
the report of this case by the Reporter.

It is not very clear from the terms used in the judgment
of the Circuit Judge whether he simply held that the con-
stitutional question had not been properly raised, or whether
he held that the act in question (1897) was constitu-
tional. We must, therefore, consider the matter in
both aspects. If he simply held that the constitu-
tional question was not properly raised and could not, there-
fore, be considered, then we think he erred in so holding;
but whether this was reversible or harmless error, will be
presently considered. The Circuit Judge seemed to think
that because the defendant, neither in its answer nor in its
exceptions to the judgment of the magistrate, designated
neither the article nor section of the Constitution with which
the act of 1897 was claimed to conflict, although the *consti-
tutional provision* with which the act was claimed to con-
flict—the clause prohibiting discrimination in legislation—
was distinctly specified both in the answer and in the excep-
tions, the question of the constitutionality of the act was not
properly presented. This was, we think, too narrow a view
of the matter, especially when applied to pleadings and pro-
ceedings in an inferior court, where, as is well known, the

same strictness is not required as in a court of general jurisdiction. Indeed, even in a court of general jurisdiction it is not always necessary to specify what particular section of what particular article of the Constitution is violated by the terms of a given act of the legislature. Suppose, for example, a party is desirous of assailing the constitutionality of an act upon the ground that it impairs the obligation of a contract and should so allege, without specifying the particular section of the particular article of the Constitution which forbids the passage of any law impairing the obligations of a contract, could it, for a moment, be successfully contended that in each case the constitutional question had not been properly raised and need not, therefore, be considered? No case has been cited and, so far as we are informed, can be cited, which holds that in order to raise the question of the constitutionality of an act of the legislature, it is necessary to specify the section and the article of the Constitution with which such act is claimed to conflict. On the contrary, where the *constitutional provision* with which such act is claimed to conflict (as it is here) is plainly specified, that is sufficient. The case of *Tompkins* v. *Railroad Company,* 21 S. C., 420, cited by counsel for respondent, is obviously not in point; for at page 432, the Court said that the constitutionality of the act there sought to be impeached was raised for the first time in the argument before the Supreme Court. "But inasmuch as no such question was raised in the Circuit Court or by any of the exceptions, it is not properly before us for consideration. That case, therefore, lends no support to the position taken by the Circuit Judge; for here the constitutional question was raised in the answer of the defendant, and it was the duty of the magistrate to pass upon it; and although he does not appear to have done so, in terms, yet it must be assumed that if the question was properly raised, as we have seen it was, he did not hold the act unconstitutional; for if he had, he could not have rendered the judgment he did, for if the act was unconstitutional, it was a nullity, and afforded no basis for the plaintiff's cause

12—63

of action. The question was again raised by the exceptions to the magistrate's judgment, and it was the duty of the Circuit Judge to pass upon it, and it must be assumed that he held the act to be free from any constitutional infirmity. Then, again, the question is again most specifically and plainly presented by the several exceptions to the judgment of the Circuit Judge, imputing error to him in not holding the act of 1897 to be in violation of certain specified sections and articles both in the Constitution of the United States and of this State. So that even if there was error on the part of the Circuit Judge in holding that the constitutional question was not properly raised, and if at the same time it should be ascertained that the act of 1897 is free from any constitutional infirmity, then such error on the part of the Circuit Judge becomes harmless, and is not reversible error.

This brings us to the consideration of what is the real question in this case, viz: Whether the act of 1897 is in conflict with the provisions of the Constitution either of this State or that of the United States. The provisions with which the act is claimed to be in conflict, is that contained in sec. 1, of art. XIV., of the Constitution of the United States, and that contained in sec. 5, of art. I., of the Constitution of this State. As these provisions are practically identical, both prohibiting the denial to any person the equal protection of the laws, these two constitutional provisions need not be considered separately. The argument is, as we understand it, that by the provisions in the act of 1897 subjecting common carriers to a penalty for not paying or refusing to pay a claim for any loss of, or damage to, any article entrusted to them for transportation within sixty days from the time when such claims shall be made, the act comes in conflict with the constitutional provision above referred to, and thus, it is contended, discriminates against common carriers, by subjecting them to a liability not imposed upon any other person, or any other class of persons, and thus denying them the equal protection of the

laws.   It is quite true, that the act of 1897, above referred
to (a copy of which is set out in the judgment of the Circuit
Court, which is embraced in the report of this case, and,
therefore, need not be repeated here), applies only to persons
or corporations engaged in the business of common carriers,
and has no application to any other person or class of per-
sons; but this does not necessarily bring the act into conflict
either with the constitutional provision of this State or that
of the United States, as has been held by this Court in
*McCandless* v. *Railroad Co.,* 38 S. C., 103, and *Blum* v.
*Richland County,* 38 S. C., 291, and by the Supreme Court
of the United States in the cases cited by Mr. Justice Brewer
in the case of *Gulf, Colorado & Santa Fe Railway Company,*
v. *Ellis,* 165 U. S., at page 155.   These cases establish the
doctrine that while the object of these constitutional pro-
visions, both Federal and State, is to prevent discrimatory
legislation, yet they cannot be so construed as to deprive the
law-making department of the government of the power to
make a classification of its citizens; so that laws may be
passed which, if applicable alike to all persons, natural or
artificial, belonging to a given class, are not violative of the
provisions of the Constitution forbidding a denial to any per-
son of the equal protection of the laws.   As is said by Mr.
Justice Brewer, in delivering the opinion of the Court in Gulf,
Colorado and Santa Fe Railway Co. *v.* Ellis, at the page
above cited, "But it is said that it is not within the scope of
the fourteenth amendment to withhold from States the
power of classification, and that if the law deals alike with all
of a certain class, it is not obnoxious to the charge of a de-
nial of equal protection.   While, as a general proposition,
this is undoubtedly true (citing numerous cases), yet it is
equally true, that such classification cannot be made arbitra-
rily.   The State may not say that all white men shall be
subjected to the payment of the attorneys' fees of parties
successfully suing them, and all black men not.   It may not
say that all men beyond a certain age shall be alone thus sub-
jected, or all men possessed of a certain wealth.   These are

distinctions which do not furnish any proper basis for the
attempted classification.    That must always rest upon some
difference which bears a reasonable and just relation to the
act in respect to which the classification is proposed, and can
never be made arbitrarily and without any such basis." The
classification made by the act of 1897, the validity of which
is here questioned, is that of common carriers, and the pro-
visions of the statute apply alike to every person, natural or
artificial, engaged in the business of a common carrier.    If,
therefore, this is not an arbitrary classification, but rests
upon distinctive differences between the business of a com-
mon carrier and that of any other class of persons, then the
fact that the provisions of the act apply alone to one class of
persons, common carriers, will not render the act obnoxious
to the constitutional provisions above referred to.    That
there are well marked distinctions between the kind of busi-
ness carried on by a common carrier and that of any other
class of business, is manifest and has always been recog-
nized.    As is said by the late Judge Cooley, in his valuable
work on Constitutional Limitations, at page 390 of the 2d
edition, "The legislature may also deem it desirable to pre-
scribe peculiar rules for the several occupations, and to estab-
lish distinctions in the rights, obligations, duties and capaci-
ties of citizens"—and the distinguished author proceeds to
give common carriers as one of the instances in which this
may be done.    In addition to this, it will be observed that
the default for which the penalty is imposed is, *not* in failing
to pay a debt, but in failing to pay, or refusing to pay, a
claim of a character peculiar to common carriers, to wit: a
claim for the loss of or damage to articles shipped over the
lines of such common carrier.    It was, therefore, not a debt
of *any* character which might be contracted by any one, but
it was a liability of such a character as none but a common
carrier would be likely to incur.    The case of *Gulf, Colorado
& Santa Fe Railway Company,* 165 U. S., 150, from which
we have quoted above, seems to be largely, if not mainly,
relied upon by counsel for appellant to sustain his contention

that the act of 1897 is unconstitutional. We think, however, that this case differs widely from that; for here the act of 1897 applies to *all* common carriers, while in the case cited, the Texas statute, which was there under consideration, did not apply to *all* common carriers, but was limited in its application to one subdivision of the class known as common carriers, to wit: railway corporations. Again, the Texas act applied to any claim made "for personal service rendered or labor done, or for damages, or for overcharges on freight, or claims for stock killed or injured by the train of any railway company," &c., and was not limited to such claims as were peculiarly incident to the business of a common carrier, as in the case of our act of 1897. This is quite sufficient to differentiate that case from this. We are of opinion that our act of 1897 was passed, *not* for the purpose of enforcing more speedy *payment* of claims against common carriers, but for the purpose of enforcing more prompt action on the part of common carriers in passing upon the validity of claims presented against them, and that the time allowed by the act—sixty days—after presentation of any claim, is reasonable and sufficient to afford an opportunity to investigate the propriety and legality of the claims; and that though the provisions of the act are applicable only to claims of a certain specified character against common carriers, and do not apply to any other class of persons, yet that does not bring the act in conflict with any constitutional provision, either State or Federal, and hence the Circuit Judge could not have properly held the act of 1897 to be unconstitutional; and the exceptions raising this point must be overruled.

It only remains to consider the appellant's third exception, which imputes error to the Circuit Judge in not holding that the act of 1897 has no application to interstate shipments of freight by common carriers. In the first place, we are unable to perceive anything in the record before us showing that this was an interstate shipment of freight. On the contrary, the allegation in the complaint is that the defendant

company did, "on the 18th day of December, 1900, receive a certain lot of plows in the city of Charleston, S. C., consigned to above named plaintiff, at Ridgeland, S. C., and that the plows were damaged in transit." But even if it had appeared to have been an interstate shipment, we do not see wherein our act of 1897 conflicts with the interstate commerce clause of the Constitution of the United States, or with any act of Congress upon that subject. No such act has been cited, and we do not see any suggestion of conflict. The act of 1897 does not purport to regulate or in any way interfere with interstate shipments of freight. It simply imposes a certain duty upon "all common carriers doing business in this State," which in no way relates to the transportation of the freight, but relates to a duty required of the common carrier after the transportation is completed. We do not think that appellant's third exception can be sustained.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

Remittitur in this case held up on application for writ of error to Supreme Court of United States.