this mixture, or shall 70 per cent of all sales be first deducted as being tax exempt before the remainder is taxed?

There is no escape from the conclusion that, since the oil company mixed the 70 per cent nontaxable with the 30 per cent taxable and sold them so, the only fair basis for computing the tax is according to the physical fact, and appellants' contention thereabout must be sustained. I think, therefore, the judgment of the Circuit Court should be reversed.

MR. JUSTICE WATTS, (dissenting). I am satisfied with the decree of Judge Mauldin and think the judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. JUSTICE FRASER concurs.

MR. JUSTICE MARION dissents.

---

## 11780

### FOWLER v. CITY OF ANDERSON *ET AL.*

#### (128 S. E., 410)

1. STATUTES—PROVISO OF ACT TO "REGULATE" AND "CONTROL" OPERATION OF BILLIARD ROOMS HELD SUFFICIENTLY EMBRACED IN TITLE; "REGULATION."—Proviso of Act February 15, 1924 (33 St. at Large, p. 895), entitled "An Act to Regulate and Control Billiard and Pocket Billiard Rooms, * * *" providing that Act should not authorize or empower operation of billiard room or table in any town or city where forbidden by ordinance, *held* germane to and embraced in title of Act, and not obnoxious to Const. Art. 3, § 17; "regulation" meaning to adjust, control, direct, or subject; "control" being synonymous to regulate, though of broader sense, meaning to exercise restraining or directing influence, to dominate, regulate, to hold from action, curb, subject, overpower.

2. MUNICIPAL CORPORATIONS—MUNICIPALITIES HELD AUTHORIZED TO PROHIBIT OPERATION OF POOL ROOMS.—Under Act February 15, 1924, § 3 (33 St. at Large, p. 897), relating to operation of billiard and pool rooms, and providing that Act should not authorize operation in any town or city, where forbidden by ordinances, towns and cities have power to prohibit generally the operation of billiard and pool rooms and tables, and not merely to prohibit or surpress such

rooms as are shown to be operated in manner offensive to health, morals, or good order of community.

3. Constitutional Law—Municipal Corporations—Act to Regulate Operation of Pool Rooms Held Not Invalid as Unauthorized Delegation of Sovereign Powers of State.—Act February 15, 1924, § 3 (33 St. at Large, p. 897), relating to operation of billiard and pool rooms and tables, providing that Act should not authorize operation in cities and towns, where forbidden by ordinance, is not invalid on theory that proviso gives to municipality power to nullify Act; the State having right to grant to municipality part of its sovereign power as it sees fit, as done by Civ. Code, 1922, § 4388.

Before Bonham, J., Anderson, June, 1924.   Affirmed.

Action by J. Reed Fowler against City of Anderson and others.   Decree for defendants and plaintiff appeals.

The following is the decree of Judge Bonham:

On the 31st day of May, 1924, the plaintiff filed in the office of the Clerk of Court of Common Pleas for Anderson County his complaint against the above-named defendants. After setting forth the municipal corporate capacity of the City of Anderson, and the official relations therewith of W. A. Speer, as mayor, W. W. Driskell, as chief of police, and O. H. Doyle, as recorder, plaintiff states, as his cause of action against them, that he has been for a number of years, and is now, engaged in operating a public billiard and pool room, and of selling soft drinks, cigars, cigarettes, tobaccos, papers, and magazines at number 130 North Main Street, in the City of Anderson, S. C.; that under the permit of an Act of the General Assembly of South Carolina approved February 15, 1924 (33 St. at Large, p. 895) entitled "An Act to regulate and control billiard and pocket billiard rooms in the State of South Carolina," he applied to and received from the South Carolina Tax Commission a license to operate his billiard and pool room at 130 North Main Street, Anderson, S. C., which license is dated April 26, 1924; that on or about the 13th day of December, 1923, the city council of the City of Anderson adopted an ordinance entitled "An ordinance to prohibit the keeping and main-

taining, within the City of Anderson, any hall, or room, or
place where billiard or pool tables are kept for gain, hire, or
public use; and to provide a penalty for violation thereof."
By its terms the ordinance was to become effective "on the
first day of June, 1924." The complaint further alleges
that it has not been established, nor is it true that the bus-
iness of the plaintiff is against the health and order of the
City, nor does it appear, nor has it been established, nor is
it true, that the ordinance above referred to is necessary for
the security, welfare, and convenience of the City, or for
preserving the health, peace, good order, and good govern-
ment within the City, and that therefore the City of Ander-
son has no authority in law to pass such ordinance; that the
same is contrary to, in conflict with, and inconsistent with,
the Act of the General Assembly of South Carolina above
referred to, which is designed to "regulate and control
billiard and pocket billiard rooms in the State of South
Carolina," and the City is without authority to prohibit that
which the State permits and authorizes as a legitimate busi-
ness. Further, the plaintiff alleges that so much of the said
Act of the Legislature as is contained in the proviso to
Section 3 thereof is null and void under the provisions of
Article 3, Section 17, Constitution S. C., 1895, in that the
provisions of the proviso are not contained in the title of
the Act, nor are such provisions germane to the title and
subject of said Act, but are repugnant to and destructive
of the purposes disclosed by the title.

Further, he alleges that plaintiff's business is not a nui-
sance per *se;* that it is conducted lawfully and properly;
that he is a person of good character, and no complaint has
ever been made against his place of business nor the man-
ner in which it has been and is conducted; that he has spent
considerable sums of money in his business, which is a
legitimate and going concern, and the enforcement of said
ordinance would operate to deprive him of his property
without due process of law; that plaintiff was notified to

close his place of business when the ordinance became effective June 1st, 1924; and that defendants were preparing to enforce said ordinance against him, which enforcement would operate to deprive him of his property without due process of law in violation of Article 1, Section 5, Constitution S. C., 1895, and of Amend. 14, Section 1, Constitution United States, and to deprive him of the equal protection of the laws guaranteed by Amend. 14, Section 1, Constitution United States, and Article 1, Section 5, Constitution South Carolina, and that plaintiff has no adequate remedy at law. The prayer of the complaint is that the said ordinance be declared to be unconstitutional, null, and void, and that the defendants, their agents, servants, and employees be forever enjoined and restrained from enforcing it.

May 31, 1924, I granted, on motion of plaintiff's attorneys an order requiring defendants to show cause before me the 13th of June, 1924, why the prayer of the complaint should not be granted, and enjoining and restraining them from attempting to enforce the ordinance pending the hearing of the return of the rule.

Defendants made return to the rule at the time and place named, which return was largely a demurrer to the complaint. It was denied that the ordinance of the City of Anderson attacked by the complaint was invalid, or that it was contrary to, or in conflict with, any of the laws of the State of South Carolina, or that it violated any provision of the Constitution of South Carolina, or of the United States; that, on the contrary, it is authorized by the laws of the State of South Carolina and of the United States. It is further set up by the return that the Act of the General Assembly of South Caroilna under which the plaintiff claims the right to operate a billiard or pool room in Anderson, contrary to the City's ordinance, expressly prohibits plaintiff and all other persons from operating such billiard or pool room, or tables in any town or city wherein such

operation is forbidden by ordinance. It is further set up that plaintiff's business is a nonuseful and unnecessary pursuit, fraught with some danger to the morals of those who play, so recognized by the common law and the Courts; a business in which no one has an inherent right to engage, and of the harmful tendency of which the Courts will take judicial notice, which requires no proof and which cannot be overcome by allegations of the complaint of the lawful character and legitimate conduct thereof, nor by testimony in support thereof,

Further, it is urged by the return that the City of Anderson, by the enactment of the ordinance complained of, has determined that the keeping and maintaining therein of pool rooms and billiard parlors for gain or hire is demoralizing and detrimental to the public welfare; that in protecting the public morals and order by said prohibitory ordinance the municipal authorities cannot be stayed by considerations of incidental loss or inconvenience which petitioner or other individuals may sustain; that said ordinance does not deny to the petitioner or others engaged in such business the equal protection of the laws, nor does it deprive them of their property without due process of law; and that the police power justifies the ordinance.

I have purposely given a full synopsis of the complaint and the return to the rule, because it will thus be seen that the questions raised thereby are those involved in the case of *Clegg v. Spartanburg,* 128 S. E., 36, recently decided by the Supreme Court of South Carolina; except those questions made by pleading the Act of February, 1924. In other words, this case is controlled and determined by the decision in *Clegg v. Spartanburg,* unless that decision is nullified by the Act of February, 1924.

In the leading opinion of the *Clegg case* Mr. Justice Marion said: "The soundness of the general principle that what the State has so far recognized as a legitimate business as to license a municipality can not prohibit may be readily

conceded." When that utterance was made the statute law of the State dealt only with the territory outside incorporated towns and cities in licensing poolrooms and billiard tables. Since the above-quoted utterance by Mr. Justice Marion was made the General Assembly has passed the Act of February 15, 1924, entitled "An Act to regulate and control billiard and pocket billiard rooms in South Carolina." By the express terms of the Act any person, firm, or corporation desiring to operate a billiard room shall apply in writing for a license to the South Carolina Tax Commission, and if such person, firm, or corporation comply with the requirements set forth in the Act as conditions precedent, the Tax Commission if satisfied of the truth of the facts stated in the application, "shall issue a license to said applicant, or applicants, who shall then be permitted to operate such billiard or pocket billiard room at the place mentioned in application during the term of said license, unless said license is forfeited for violation of the terms of tihs Act." If the Act stopped here there would be no difficulty in arriving at the opinion, and so declaring, that the State, having by the Act of February 15, 1924, recognized and licensed the business of keeping and maintaining pool and billiard rooms in all its territory, no municipality could by ordinance prohibit it. But the Act does not stop there. Immedately following the words which I have quoted is the following proviso: "Provided, that this Act shall not authorize nor empower any person, firm or corporation, to operate a billiard room or table in any town or city wherein the operation of such billiard room or table is forbidden by the ordinances of such towns or cities."

Around this proviso is centered all the argument in the case. Plaintiff attacks the Act, or rather the proviso, on the ground that it is null and void because it violates the provision of Article 3, Section 17, of the Constitution of South Carolina of 1895, in that its provisions are not embraced in the title of the Act; that the

proviso is not germane to the purposes set forth in the title. The Constitution provides that "Every Act or Resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." Specifically the argument is that the title relates to the regulation of the operation of billiard and pocket billiard rooms, and the proviso carries the power to prohibit their operation. The title is "an Act to regulate and control," etc. The queston turns upon the definition of the words "regulate" and "control." Are they synonymous in meaning? Webster defines them thusly: "Regulate: To adjust or control by rule, method or established mode; to direct by rule or restriction; to subject to governing principles or laws." "Control: To exercise restraining or directing influence over; to dominate; regulate; hence to hold from action; to curb; subject; overpower."

It is apparent that control has a broader meaning than regulate. It carries with it the power to stop, to put an end to a going concern. In short, to prohibit it. Is such power expressed in the title of the Act? I think so. The subject of the Act is the regulation and control of billiard and pool rooms. The proviso relates to the same subject— is germane thereto. It recognizes the power of cities and towns to control such business by prohibiting it. To what other subject does the Act relate except the regulation and control of billiard rooms? I cannot perceive that it bears upon any other subject. In the case of *Charleston v. Oliver,* 16 S. C., 46, the Supreme Court held to be unconstitutional an Act which had this title, "An Act to regulate the assessment and taxation of personal property in the City of Charleston," and which Act contained a provision for the imposition and collection of a license on businesses and occupations. Nevertheless in that case the Court said: "If the title of this Act had been an Act to regulate taxation in the City of Charleston, then it is very clear that anything relating to the general subject of taxation might

properly have been included in the Act," etc.   Now the Act under consideration has for title the following: "An Act to regulate and control billiard and pocket billiard rooms in the State of South Carolina."   The proviso under contention, relates to the control of such houses by municipal corporations.   In Cooley's Constitutional Limitations, 143, 144, the purpose of this and similar constitutional provisions is said to be:   (1) to prevent "hodge-podge" or log rolling legislation; (2) to prevent surprise or fraud upon the Legislature by means of the provisions in bills of which the titles gave no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted; (3) to fairly apprise the people through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon by petition or otherwise, if they shall so desire."   Does the title to the Act in question offend against any of these canons of constitutional law?   No suggestion is made that it is "hodge-podge" legislation.   No member of the Legislature reading the title could fail to be apprised of the fact that the bill related to subject of the operation of billiard and pool rooms.   If he was opposed to the prohibiting of the operation of them, he surely would not fail to read the bill.   If a citizen interested in the subject saw published the title of such bill, he could not fail to be warned that the Legislature had under consideration the whole subject of the operation of such business, and that he had the opportunity to be heard thereon, if he so desired.

It seems clear to me that the proviso of the Act is germane to and is embraced in the title, and is not obnoxious to the provisions of the Constitution involved against it.

It is argued with great ability and plausibility that it was not the intention of the Legislature as expressed in the proviso to the Act to give to cities and towns the power to prohibit generally within their territorial

limits the operation of billiard and pool rooms and tables. But, rather, that it was to empower them to prohibit or suppress such of these rooms as are shown to be operated in such manner as to offend against the ordinances regulating the health, morals, and good order of the community, and thus have become nuisances; and that such regulation and control shall be enforced only after cause shown.

I wish I could adopt this view. The plaintiff in this case is a man of excellent character and standing—is a member of the city council. It is conceded that his place of business is conducted in an orderly manner, and that there have been no complaints made of it. He has put a good deal of money in the business, and its prohibition will cause loss to him. But I cannot bring my mind to the conviction that that was the intention of the Legislature. The language of the proviso is plain and devoid of ambiguity. It must be construed in the light of its meaning derived from the analysis of its words. Mr. Justice McIver, in *Charleston v. Oliver, supra,* quotes Chief Justice Marshall in *Ogden v. Saunders,* 12 Wheat., 332; 6 L. Ed., 606, as declaring the rule on this subject to be as follows: "The intention of the instrument must prevail; that this intention must be collected from its words; that its words are to be understood in that sense in which they are generally used by those for whom the instrument was intended."

Mr. Justice McIver adds to this citation this: "We may also look to 'the object to be accomplished, or the mischief designed to be remedied or guarded against, by the clause in which the ambiguity is met with. When we once know the reason which alone determined the will of the law-makers, we ought to interpret and apply the words used in a manner suitable and consonant to that reason, and as will be best calculated to effectuate the intent.'" Analyzed by these rules, it seems clear to me that the Legislature recognized the fact that certain cities and towns in the State had adopted, or might adopt, ordinances prohibit-

ing the operation of billiard and pool tables in such communities, and they provided that such prohibitory ordinances be given force and effect. The proviso plainly manifests the purpose of the Act not to interfere with or question such ordinances. It may be assumed that the legislators who framed and passed the Act knew that this question had become a live one in the State; that cases involving the validity and constitutionality of ordinances of this character had been and were before the Courts. They must have known that in some cities and towns the sentiment was in favor of the prohibition of the operation of billiard and pool rooms, and in some cities and towns the sentiment was in favor of their operation. It seems plain to me that the legislative intent was to give to each of such classes the right and power to settle the question for itself. This is the essence of democratic government—local selfgovernment—self-determination by communities.

It is urged against the proviso that it nullifies in some cities the whole Act; that the South Carolina Tax Commission must issue the license, if the applicant complies with the requirements of the Act, even though the commission knows that the city in which the applicant proposes to operate has an ordinance prohibiting the business. This may well be doubted; but, if it be the correct interpretation of the Act, it is fairly to be presumed that the Legislature considered that one would not apply for a license to do business in a municipality where such business is prohibited, unless it be for some other purpose than operation; as, for instance, to test the validity of the ordinance. At any rate, the application takes the license with his eyes wide open to the conditions

It is argued further that to uphold the proviso of this Act is to give the municipality the power to nullify the Act—is to give to the cities and towns greater power than the State has under the Act.

Well, the State may grant to a municipality part of *its*

sovereign power as it sees fit to do.    Indeed, by Section 4388, Civil Code, 1922, it has granted large powers.

"(4388) § 10. *Power to enact Rules or Ordinances for Police Government.*   The city councils and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same.    And the said city or town councils may fix fines and penalties for the violation thereof, not exceeding one hundred dollars fine or thirty days' imprisonment:   Provided, that such rules, by-laws and ordinances shall not be inconsistent with the laws of this State:   Provided, further, that nothing herein contained shall be construed to repeal the law estab-lishing local boards of health."

Mr. Justice Marion in *Re Clegg v. Spartanburg* says of it:  "It is apparent that this grant of power for purposes of municipal legislation is as broad and comprehensive as it was within the power of the State to delegate.    It is a grant of the sovereign police power of the State itself, limited alone (1) by the territorial confines of the munici-pality authorized to exercise it, and (2) by the proviso that legislation thereunder 'shall not be inconsistent with the laws of the State.'    If so, subject to those limitations, the authority of the City to prohibit the maintenance and opera-tion of public pool rooms for gain is as ample and plenary as the power of the State to prohibit such business.    The only limitations upon this power of the State in that regard are the constitutional guaranties which safeguard personal liberty and private property."    The power contained in the proviso under fire is not broader than that granted above.

The State may restrict the operations of the law to such territorial limit as seems good to it. Before the passage of this Act the State did not attempt to license or regulate billiard and pool rooms or tables, except in the territory outside of incorporated cities, towns, and villages. Section 5175, Civil Code, 1922. The constitutionality of this section has been upheld by the Supreme Court in the case of *Thomas v. Foster,* 108 S. C., 98; 93 S. E., 397. In the exercise of its police power the State, it seems clear to me, may lawfully delegate to inferior units of the government such exercise of that power as appears to be for the best interest of such unit. The proviso to the Act of February 15, 1924, saves the ordinance from being in conflict with the State law on the subject.

I am constrained to the conclusion that this action may not be maintained.

It is therefore ordered, adjusted, and decreed that the prayer of the complaint for permanent injunction be denied; that the return to the rule to show cause is sufficient. The rule is discharged, and the temporary restraining order heretofore granted is revoked.

*Messrs. William P. Greene* and *Dickson & Miller,* for appellant, cite: *Where there is doubt as to whether a power to forbid is conferred upon a city by statute the doubt will be resolved against the city:* 20 Enc. L., 1140. *Provision to Act of* 1924; 33 Stat., 893, is violative of Art. 3, Sec. 17, Const., 1895; 16 S. C., 47; 68 S. C., 148; 79 S. C., 191; 91 S. C., 450; 80 S. C., 130; 116 S. C., 193. *Act constitutes destruction of business without due process of law:* 45 Sou., 725.

*Messrs. Sullivan & Sullivan,* for respondent, cite: *Inconsistent laws for different localities are constitutionally permissible:* 21 S. C., 292. *Title sufficiently explains purpose of act:* 83 S. C., 232; 109 S. C., 413; 58 S. C., 415; 71 S. C., 457; Ann. Cas., 1916-D, 104; 78 A. S. R., 941.

*If there is doubt it should be resolved in favor of the act:* 64 A. S. R., 64; 122 S. C., 476.

June 5, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

For the reasons assigned by his Honor, the presiding Judge, the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

---

### 11747

#### DUNCAN v. RECORD PUBLISHING CO. ET AL.

(127 S. E., 606)

LIBEL AND SLANDER—DEFENDANT NEWSPAPER COULD SET UP FACTS SHOWING THAT PUBLICATION WAS IN DENIAL AND EXPLANATION OF ATTACK ON IT BY PLAINTIFF SENATOR IN OPEN SESSION OF LEGISLATURE. —In State Senator's action against newspaper for libel, it was proper for defendant to allege in defense facts showing that the publication was in explanation and denial of charges made by plaintiff, though such charges were made in open session of Legislature.

Before TOWNSEND, J., Richland, June, 1924. Order reversed.

Action by T. C. Duncan against Record Publishing Co. and E. W. Robertson. From an order striking out certain portions of the separate answers of defendants they appeal.

*Messrs. R. B. Herbert* and *J. B. S. Lyles,* for E. W. Robertson, appellant, cite: *Motion to strike out too broad and should have been overruled:* 74 N. W., 277; 70 N. W., 926; 57 N. W., 982; 31 Cyc., 663; 36 N. E., 848; 149 App. Div. N. Y., 466; 93 Sou., 585. *Demurrer was proper remedy to test sufficiency of an entire defense:* 31 Cyc., 667; 97 S. C., 389; 69 S. C., 321; 105 S. C., 276; 20 Enc. Pl. & Pr., 988; 77 Hun., 192. *Allegations were relevant:* 120 S. E., 70; 17 R. C. L., 364; Newell libel &