THE CITY OF CLEARWATER V. M. S. BOWMAN.

No. 14,449.   (82 Pac. 526.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS —*Ordinances—Penalites—Surplusage.* Under a statute authorizing a city to punish the violation of its ordinances by fine only, the clause of an ordinance which attempts to provide a penalty of either fine or imprisonment is not thereby rendered entirely void, but the part relating to imprisonment may be treated as mere surplusage.

2. STATUTORY CONSTRUCTION—*Suppression of Billiard-tables Includes Pool-tables.* A statute empowering cities to suppress billiard-tables, enacted while that term was applied to tables substantially the same as pool-tables of the present time, is sufficient authority for an ordinance forbidding the use of pool-tables.

Appeal from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed October 7, 1905. Affirmed.

*O. G. Eckstein,* for appellee.
*Blake & Ayres,* for appellant.

The opinion of the court was delivered by

MASON, J.:   M. S. Bowman appeals from a conviction upon a charge of violating an ordinance of the city of Clearwater (a city of the third class) forbidding the maintenance of a public pool-table. But two questions are presented, each relating to the validity of the ordinance. The first objection made to it is that it provides a penalty of either fine *or* imprisonment, while the statute (Gen. Stat. 1901, § 1145) authorizes only the fine. The part of the ordinance which attempts to empower the police judge to pronounce a jail sentence is clearly void, but it may be treated as mere surplusage. The other provisions remain unaffected by the elimination of this one, for none of them is so connected with it as to be in any way dependent upon it. (21 A.

& E. Encycl. of L. 993.)    The defendant was sentenced
to pay a fine, not to be imprisoned, and was not preju-
diced by the inoperative words of the ordinance.

The second objection to the ordinance is that the
authority for the prohibition of public pool-tables
must be found, if at all, in section 1129 of the Gen-
eral Statutes of 1901, which gives the city council
power to suppress billiard-tables, but makes no ref-
erence to pool-tables by that name.    Evidence was in-
troduced to show that the game of pool is not the same
as that of billiards, and that a pool-table differs from
a billiard-table in having pockets.    The argument is
made in behalf of the defendant that the ordinance is
broader than the statute, that the term "billiard-table"
does not include a pool-table, and that, consequently,
the city was without authority to restrict the use of
the latter.

This contention derives some support from *Squier
v. The State,* 66 Ind. 317, where a conviction under a
statute forbidding the owner of a billiard-table to per-
mit a minor to play thereon was set aside because the
evidence showed that the game played was pool.    The
present question is affected, however, by a considera-
tion which, if applicable to the Indiana case, does not
appear to have received the attention of the court.
Evidence was introduced that billiard-tables were for-
merly made with pockets.    The same fact is shown by
the standard dictionaries and encyclopedias.    Just
when the change took place may not be clear, but the
testimony indicated that it was about thirty or thirty-
five years ago.    The statute in question was passed in
1871, but is a reenactment of the fifth subdivision of
section 29 of chapter 26, Laws of 1869.    The statute
must be construed in the light of the approved usage
of words at the time of its enactment, notwithstanding
any subsequent changes.    The argument upon the pre-
cise proposition involved is thus presented in *Sikes v.
The State,* 67 Ala. 77, 80:

"In interpreting statutes, we must endeavor to

arrive at the meaning and intention of the legislature, to be gathered from the words they have employed. Words are but the vehicle of thought; and if, since they were employed by the legislature, they have undergone change, or, if the subject they refer to has undergone modification since their employment, we must search for and enforce the sense they bore when the statute was enacted; for such, we must presume, was the intention of the lawmaking power. If when this statute was enacted—March, 1875—as the testimony shows billiard-tables embraced both classes, those with, and those without pockets, then both classes are within its prohibition. We think the legislature intended, in the employment of the term billiard-table, to include all tables on which the game of billiards was played at the time; and the language will also embrace billiard-tables under any modification they may undergo."

Even at the present time the word "billiard-table" is employed as a generic term, including the form adapted to the playing of pool. This is illustrated by the definition of "pool" in the Century Dictionary as "a game played on a billiard-table with six pockets by two or more persons." Whatever meaning might be attached to the term if found in a law recently enacted, we think, as used in the statute of 1869, it was sufficiently comprehensive to authorize the ordinance here involved, and that the conviction was properly sustained.

The judgment is affirmed.

All the Justices concurring.