## 11320

### CLEGG *ET AL.* v. CITY OF SPARTANBURG

#### (128 S. E., 36)

MUNICIPAL CORPORATIONS—ORDINANCE PROHIBITING OPERATION OF PUBLIC POOLROOMS HELD WITHIN POLICE POWER.—Ordinance prohibiting maintenance and operation of public poolrooms within the city limits *held* within police power of city, under Civ. Code 1922, § 4388, empowering city to exercise within the limits of the city the sovereign police power of the State itself, provided legislation thereunder does not conflict with State laws; such ordinance not conflicting with sections 5175, 5176, licensing and regulating pool and billiard rooms outside of incorporated cities and towns.

Before SEASE, J., Spartanburg, 1924. Affirmed.

Action by W. F. Clegg and R. T. Thomason, partners doing business as the Wigwam Billiard Parlors, on behalf of themselves and such other similarly situated owners and operators of billiard parlors in the City of Spartanburg, S. C., as may avail themselves of the benefits and contribute to the expenses of this action, against the City of Spartanburg. Judgment for defendant, and plaintiffs appeal.

*Messrs. Nicholls & Wyche* for appellant.

*Messrs. Lyles, Daniel & Drummond* for respondent.

January 14, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The appellants are proprietors of a pool room in the City of Spartanburg. The City adopted an ordinance prohibiting the maintenance and operation of public pool rooms within its limits. The appellants brought this action to enjoin the enforcement of the ordinance. On the verified complaint a rule to show cause, carrying a temporary restraining order, was issued. At the hearing on the rule the City made a return which was substantially a demurrer to the complaint. His Honor, T. S. Sease, Circuit Judge, sustained the demurrer, upheld the validity of the ordinance, and dissolved the temporary restraining order. On due application by the appellants, Mr. Justice Cothran superseded Judge Sease's order pending the determination of this appeal.

The appeal raises the one question of whether the ordinance may be sustained as a valid exercise of the City's police power. The points of attack upon the ordinance, generally stated, are:

(1) That the operation of billiard and pool tables for hire is authorized by the State and that a municipality is powerless to prohibit it; (2) that such operation is not a nuisance *per se,* and that a municipality has the power only to regu-

late, either in the mode or locality of operation; (3) that the municipality is authorized by statute to license and regulate such operation and that the power to regulate, not only does not include the power to prohibit, but by that grant excludes it.

It is apparent, and, as we understand, is conceded by appellants, that the soundness of their position as embraced within the foregoing contentions depends upon the validity of the postulate that the State, in subordination to whose reserved police power the delegated powers of the municipality are held and must be exercised, has through the supreme legislative department, either expressly or by clear implication, declared that the business of maintaining and operating public pool rooms for gain is such a business as may not be prohibited within the borders of the State by any subordinate agency of government. The validity of that proposition turns upon the construction and interpretation which shall be given to certain Acts of the General Assembly now embodied in the general statute law of the State. In determining whether such meaning and effect are to be given these legislative enactments as precludes the City from enacting a valid ordinance of this character, attention may logically be directed first to ascertaining the nature and extent of the power of the City in that regard, considered apart from the particular statutory provisions upon which the appellants rely.

So considered, that is, apart from the statutes invoked by appellants as the controlling expression of the legislative will, would the enactment of this ordinance have been a valid exercise of the police power of the City? The portion of the sovereign police power of the State, carved out and delegated to the City, is that embraced in the legislative enactment, passed in 1898 (22 Stat., 820), incorporated in the Civil Code of 1912 as Section 2994, and in Civil Code of 1922, as Section 4388, as follows:

"The City Councils and Town Councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same. And the said city or town councils may fix fines and penalties for the violation thereof, not exceeding one hundred dollars fine or thirty days imprisonment: *Provided,* That such rules, by-laws and ordinances shall not be inconsistent with the laws of the State," etc.

It is apparent that this grant of power for purposes of municipal legislation is as broad and comprehensive as it was within the power of the State to delegate. It is a grant of the sovereign police power of the State itself, limited alone (1) by the territorial confines of the municipality authorized to exercise it, and (2) by the proviso that legislation thereunder "shall not be inconsistent with the laws of the State." If so, subject to those limitations, the authority of the City to prohibit the maintenance and operation of public pool rooms for gain is as ample and plenary as the power of the State to prohibit such business. The only limitations upon this power of the State in that regard are the constitutional guaranties which safeguard personal liberty and private property. That a State, in the exercise of its police power, may prohibit the keeping of public pool rooms and billiard halls without infringing those constitutonal guaranties is well settled. In upholding the constitutionality of Section 3431, Civ. Code 1912, now Section 5175, Civ. Code 1922, requiring every person operating any pool or billiard table for private gain outside of an incorporated city or town to pay an annual license of $100, to be turned into the school fund of the County, this

Court, in *Thomas v. Foster,* 108 S. C., 98; 93 S. E., 397, by Hydrick, J., said:

"Section 3431 is clearly within the police power of the State. It deals with a business potential of evil. Playing pool and billiards is fraught with some danger of the morals of those who play, even when the playing is done under the most favorable surroundings in the atmosphere and under the restraining influence of the home, or in the privacy of the clubroom. · The danger is greatly increased when the playing is done at a public resort, where all who·can pay the price are at liberty to come and play. There is more danger of playing at such places leading to gambling and other · vices. The Legislature might have prohibited playing at such places altogether. *State v. Berlin* (21 S. C., 292; 53 Am. Rep., 677), *supra*. The right to prohibit includes the lesser measure of regulation provided for by license under the statute."

That a municipality, acting within the scope of power delegated by the State, may as freely exercise this power to prohibit without infringing constitutional guaranties, follows as a necessary sequence. Thus, in *Murphy v. People,* 225 U. S., 623; 32 S. Ct., 697; 56 L. Ed., 1229; 41 L. R. A. (N. S.), 153, the Supreme Court of the United States, in sustaining the validity of such an ordinance, passed by the Town of South Pasadena, California, "in pursuance of police power conferred by general law," said:

"Playing at billiards is a lawful amusement; and keeping a billiard hall is not, as held by the Supreme Court of California on plaintiff's application for *habeas corpus,* a nuisance *per se.* But it may become such; and the regulation or prohibition need not be postponed until the evil has become flagrant. That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything which could affect the morality of the commu-

nity or of his patrons. The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness and other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation. The ordinance is not aimed at the game, but at the place; and where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts should be prohibited, the Courts cannot go behind their finding and inquire into local conditions, or whether the defendant's hall was an orderly establishment, or had been conducted in such manner as to produce the evils sought to be precented by the ordinance. As said in *Booth v. Illinois,* 184 U. S., 425, 429; 46 L. Ed., 623, 626; 22 Sup. Ct. Rep., 425: 'A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the Courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' Under this principle ordinances prohibiting the keeping of billiard halls have many times been sustained by the Courts. *Tanner v. Albion,* 5 Hill, 121; 40 Am. Dec., 337. *Tarkio v. Cook,* 120 Mo., 1; 41 Am. St. Rep., 678; 25 S. W., 202. *Clearwater v. Bowman,* 72 Kan., 92; 82 P., 526. *Corinth v. Crittenden,* 94 Miss., 41; 47 So., 525. *Cole v. Culbertson,* 86 Neb., 160; 125 N W., 287. *Re Jones,* 4 Okl. Crim. Rep., 74; 31 L. R. A. (N. S.); 548; 140 Am. St. Rep., 655;

109 P. 570. Indeed, such regulations furnish early instances of the exercise of the police power by cities. For Lord Hale in 1672 (*Rex v. Hall*, 2 Keble, 846), upheld a municipal by-law against keeping bowling alleys because of the known and demoralizing tendency of such places."

Considered apart from other legislative enactments, there can be no doubt, therefore, that under the comprehensive grant of power conferred by the State this ordinance of the City of Spartanburg is a valid exercise of the City's police power.

If so clearly authorized by one legislative enactment, is the ordinance nullified by others? That is, is the ordinance so clearly "inconsistent" with other laws or expressions of the legislative will as to render it nugatory? The statutes upon which appellants rely to sustain the affirmative of that query are certain Acts of Assembly now numbered and incorporated in Civil Code of 1922 as follows: ·

"(5175) Every person operating any pool or billiard table in this State, outside of an incorporated city or town, shall pay to the Clerk of Court of the county in which such table is operated, an annual license of one hundred dollars, to be turned into the school funds of such county: *Provided*, That this section shall not apply to clubs or individuals where the table is not operated for private gain.

"(5176) Nothing herein contained shall be construed to prevent the municipal authorities of any incorporated city or town in this State from levying and collecting such fines or licenses as may be imposed by such municipal authorities."

Section 5175 was enacted in 1911 (27·Stat., 141). Section 5176 was enacted in 1875 (25 Stat., 845), as part of an Act requiring a traveling circus, etc., exhibiting in any county to obtain a license from the Clerk of the Court of such county and to pay therefor $100, etc. Section 259, Crim. Code 1922, makes violation of Section 5175 a misdemeanor. Section 240, Crim Code 1922, enacted in 1910

(26 Stat., 750), provides that any keeper or owner of pool or billiard tables allowing a minor under 18 to play pool or billiards, or to loiter therein, shall be guilty of a misdemeanor. As noted above, the general grant of police power to cities and towns was by Act of 1898 (22 Stat., 820).

With the foregoing statutory provisions before us, appellants' contentions resolve themselves into the concrete proposition that; when the State by the Act of 1911 (Section 5175 above), undertook to license pool rooms outside of incorporated cities and towns, it thereby, in the exercise of its reserved police power, assumed jurisdiction of the business of operating pool rooms both within and without incorporated cities and towns and prescribed as a definite state policy the licensing of that business. The soundness of the general principle that what the State has so far recognized as a legitimate business as to license a municipality cannot prohibit, may be readily conceded. If, therefore, the effect of Section 5175, considered in connection with Section 5176 (Civ. Code 1922), is to prescribe, either expressly or by clear implication, that pool rooms shall be licensed both within and without incorporated cities and towns in the State, then appellants' position is tenable; otherwise, not.

It would seem too obvious to warrant discussion that neither Section 5175, requiring the payment of a license fee by every person operating a pool or billiard table "outside of an incorporated city or town," nor Section 5176 (Civ. Code 1922), providing that nothing contained in the chapter of which Section 5175 is a part shall "prevent the municipal authorities of any incorporated city or town in this State from levying or collecting such fines or licenses as may be imposed" by them, expressly requires or prescribes that the business of operating pool rooms within cities and towns shall be licensed by the municipal authorities. On the contrary, in unmistakable terms, the State expressly confines the exercise and limits the application of its authority to the territory over which jurisdiction as to the subject matter

of the legislation had not theretofore been committed by general grant to the towns and cities. There is, therefore, in fact, no state law of general application licensing the business of operating pool rooms, and hence no legitimate basis for applying the principle that what the State has so far legitimatized as to license, a municipality under a general grant of power may not prohibit.

If the licensing of pool rooms in towns and cities is not expressly required by State law, is such requirement to be implied? We know of no applicable rule of statutory construction which would justify such implication. Appellants properly assume the premise that the general grant of police power to cities and towns was not irrevocable and that the State reserved the right to exercise at pleasure its sovereign authoritiy within the corporate limits of cities and towns as to any matter of police jurisdiction it might see fit to control. If, therefore, the State had desired or intended to require that pool rooms should be licensed within towns and cities, that intention could easily have been expressed either by enacting a law of general application or by some specific reference to the territory embraced within towns and cities. Under the general principle of interpretation, *expressio unius est exclusio alterius,* the affirmative description of the territory intended to be affected by the license law negatives an implication that it was intended to embrace the territory not expressly included therein. 25 R. C. L., 983, § 230. In enacting the license law of 1911 (Section 5175, Civ. Code 1922), limited to the territory of the State outside of towns and cities, the Legislature is presumed to have had the statute of 1898 (Section 4388, Civ. Code 1922) before it, to have been acquainted with its efficacy to enable towns and cities to prohibit the operation of pool rooms, and to have passed the license law was thus limited with reference to this plenary power previously vested by general grant in towns and cities. 25 R. C. L., 1063, § 287. If the prohibitory ordinance here in question had been in

force in 1911, it would scarcely be contended that the Act of that year licensing pool rooms outside of towns and cities nullified or repealed such city ordinance by necessary implication.

If, as would seem clear, the state law affords no ground for the implication that it was the legislative intent to require that towns and cities should license but not prohibit pool rooms, the remaining contention that a prohibitory ordinance of a city would infringe the spirit of the state law and run counter to the public policy therein expressed is obviously untenable. In so far as the state law, licensing pool rooms outside of cities and towns and forbidding keepers thereof anywhere within the State to allow minors under 18 to play therein, discloses the attitude of the State, the policy indicated is one of condemnation rather than approval. The business is clearly and unequivocally classified as one of "potential evil." *Thomas v. Foster, supra.* To interpret a license law affecting such business, expressly limited to certain territory, is an indication of the policy that the business might not be prohibited by the State or its duly constituted agencies in other territory, is to ignore the fundamental principle that, subject to constitutional restrictions as to local laws, the authority that legislates for the State at large in the exercise of the police power may prescribe entirely different and inconsistent laws for different localities within the territory of the State, according as the circumstances of a particular locality or the prevailing public sentiment of a particular section of the State may demand. *State v. Berlin,* 21 S. C., 292; 53 Am. Rep., 677. Certainly the legislative application of one form of regulation in one part of the State will not support the inference that such legislation is declarative of a general policy that only that particular form of regulation, or a less drastic one, shall be applied in other territory. In the case just cited (*State v. Berlin*) this Court sustained the validity of an Act prohibiting the sale of spirituous liquors outside of

incorporated cities and towns, while permitting such sale under license within cities and towns. There the expressed policy of the State was to prohibit without and to license within the towns and cities. Here, as we think, the scarcely less clearly disclosed policy of the State is to license without and to permit the prohibition of the business within the towns and cities. That it is a policy grounded in sound reason requires no demonstration, founded, as it is, on the universally recognized principle that the protection of morals and the promotion of the general welfare in urban centers of population require the application of very different and usually more stringent police laws than are necessary in the territory of the State outside of such centers. 19 R. C. L., 798, § 106.

For the reason stated, which are substantially those advanced in the able circuit decree of Judge Sease, the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE COTHRAN (dissenting) : The universal rule is that a municipality cannot by ordinance declare that to be a nuisance which is not so at common law nor by statute. McQuillin Mun. Ord. (1904 Ed.), § 441. It is conceded that the operation of a pool room is not a nuisance *per se*. It certainly has not been made so by statute, for the statute provides for the issuance of a license by the Clerk, a statutory officer, *pro hac vice* representing the State, for the operation outside of municipalities; and the case of *Thomas v. Foster*, 108 S. C., 98; 93 S. E., 397, is authority for the statement that the operation inside the municipality is less of a nuisance than outside. The case of *Murphey v. California*, 225 U. S., 623; 32 S. Ct., 697; 56 L. Ed., 1229; 41 L. R. A. (N. S.), 153, I think, would be conclusive, but for this distinguishing circumstance. It wakes a memory of *Scott v. Donald*, 165 U. S., 58, 107; 17 S. Ct., 262, 265; 41

L. Ed., 632, 648, and *Vance v. Vandercook,* 170 U. S., 438; 18 S. Ct., 674; 42 L. Ed.,1100.

MR. JUSTCE WATTS concurs.