15484

ARNOLD *ET AL.* v. CITY OF SPARTANBURG *ET AL.*
(23 S. E. (2d), 735)

524

*Messrs. Watkins & Prince,* of Anderson, Counsel for Plaintiffs,

526

*Mr. C. A. Taylor, Mr. T. M. Lyle, Mr. H. K. Osborne,* and *Mr. Esten C. Taylor,* all of Spartanburg, Counsel for Defendants,

January 5, 1943.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM:

The plaintiffs, H. R. Arnold and others, for themselves and others similarly situated, brought this action, containing prayers for temporary and permanent injunctive relief, in the original jurisdiction of this Court, against the City of Spartanburg, a municipal corporation, and, in their respective official capacities, against the members of the city council, the chief of police and the chief of detectives of that municipality.

The plaintiffs alleged in their complaint that they were owners of business establishments in that city wherein, among other commodities, beer and wine were sold; that Section 1 of Act Number 204 of the General Assembly of 1935, April 26 (Acts S. C., 1935, 39 St. at Large, page 276), amending earlier Acts, provides that: "From and after the approval of this Act all Beer, Ales, Porter and all other similar Malt or fermented Beverages containing not in excess of 5% alcohol by weight and on all natural wine as defined by Federal Statute, in the Act of Congress of February 24, 1919 not exceeding 14% shall be and are hereby declared to be non-alcoholic beverages, and non-intoxicating."

The complaint also cites Act Number 406 of the General Assembly of 1933, May 31 (S. C. Acts 1933, 38 St. at Large, page 567), providing that "every person, firm or

corporation engaged in the business of selling beer, ale, porter, wine or any beverage legalized under the provisions of this Act, shall apply to the South Carolina Tax Commission for a permit to sell such beverages." Section 10.

It is alleged that the plaintiffs have complied with all the provisions of the Acts above cited, and that they are engaged in the lawful and orderly sale of such products; that on October 27, 1942, the city council of the City of Spartanburg adopted an ordinance declaring it unlawful from that date to sell or offer for sale any beer, wine or other drink of an alcoholic content in that city on Sundays between the hours of twelve o'clock midnight Saturday and sunrise Monday, and providing certain penalties for violation thereof, a copy of that ordinance being attached to the complaint.

The plaintiffs alleged that the ordinance in question is unconstitutional and void and in excess of the police power of the city, in that it constitutes arbitrary, unfair, and unlawful discrimination against the plaintiffs in derogation of their constitutional rights in their sale of these particular legal products which it is alleged are not contrary to the health, order and general welfare of the city and its residents; that plaintiffs have been notified that violations of this ordinance occurring on November 1, 1942, and on all subsequent Sundays will be subject to prosecution; and that such threatened prosecutions, if permitted, will work irreparable injury to the plaintiffs, diminish their income, depreciate the value of their good name and good will, cause the closing of lawful businesses and bring about a multiplicity of suits.

It is alleged that the plaintiffs have no adequate remedy at law, that the public interests are centered upon an early determination of the legal status of the said ordinance, thus creating an urgent emergency.

Upon the verified complaint and the prayers of the plaintiffs, an order was passed by this Court temporarily restrain-

ing the defendants from enforcing or attempting to enforce the said ordinance, and fixing dates for the defendants to show cause before this Court why the prayers of the plaintiffs should not be granted.

In reply to the complaint and return to the rule to show cause, the defendants filed a demurrer (which we shall discuss later) and a verified answer and return, admitting certain allegations of the plaintiffs, but denying, among other things, the lawful rights of the plaintiffs to engage in such business on Sundays, and alleging that the matter of the sales of beer and wine on Sundays when liquor stores are closed, had been an increasing problem, that appeals for relief against such conditions had been frequently made to the city authorities; that on week-ends, both during the day and late at night, large numbers of people, including soldiers from nearby Camp Croft, had patronized the beer parlors, often becoming noisy and boisterous after drinking beer and wine, and indulged in ' fisticuffs and personal encounters, making it difficult to maintain order and resulting in frequent arrests for drunkenness and disorderly conduct; that urgent requests for the passage of such an ordinance were made from many sources to the city council which, after considerable consultation among themselves and with other citizens, decided that the passage of such an ordinance would constitute their best possible compliance with their duty to protect the public peace, safety and good order of the city as well as to uphold the sanctity of the Sabbath.

The allegations of the answer were supported by a number of accompanying affidavits made by police officers and other residents of the city. The chief of police, who had been a member of that department for twenty-five years, deposed that in effectuating his duties of preserving peace and good order in that city, he had observed that in and around the majority of beer parlors people became boisterous, loud and disorderly after drinking beer and wine, that disputes and fights frequently occur, necessitating the calling of the

police, that people often congregate on the sidewalks near such beer parlors in sufficient numbers as to make it necessary for pedestrians to walk in the streets; that many women of loose morals are arrested in or near beer parlors which he believes are used as contact places for the carrying on of their illegal business; that exclusive of such arrests as might be made of soldiers from Camp Croft (which cases are handled by the military authorities and are not covered by the records of the city police department) a great number of charges of drunkenness and disorderly conduct are being made.

The chief of plain clothes detectives of that city, who has been a member of that police department for seventeen years, deposed that during week-ends the influx of people into Spartanburg is very great; that the drinking in the beer or wine parlors usually begins on Saturday afternoons and continues through Sunday; that with a metropolitan population of 75,000 (in a city whose normal population is about 32,000) law enforcement upon week-ends when drinking is heaviest, and when many soldiers of Camp Croft are on leaves in the city, becomes increasingly difficult; and that as a result of the consequent loud and boisterous conduct, it is almost impossible to preserve peace and order.

A sergeant on the Spartanburg police force deposed that a place of business where beer is sold is located about fifty feet from a certain church in that city; that in addition to week days, beer is sold at that place (which is near deponent's home) on Sundays, continuing until as late as two o'clock on Monday mornings; that people come there during church hours and blow their horns and make other noises, seriously disturbing the church services; that many people buy and drink the beer at the parlor and others send their children there to purchase it; that there have been many complaints in the community regarding the disturbances of the religious worship; that as a general rule he believes such infractions of the peace and good order in

Spartanburg were worse on Sundays than on other days in the ways which have been named, and in obstructing vehicular and pedestrian traffic; that most heavy beer and wine drinking begins about five o'clock Saturday afternoons and continues as late as four o'clock Monday mornings, during which there exists in the city much rowdiness and hilarity and some fighting and gambling; that the cases in the police Court on Mondays are in excess of those on other days; that in his opinion, if it were not for such arrests occurring on week-ends, the city could operate with one-third less policemen.

Another affidavit, executed by three members of the church mentioned above, was submitted further confirming the deposition of the police sergeant with reference to the noisy disturbances and boisterous conduct which occur at a beer dispensing establishment so near that church as to interfere with its Sunday evening services.

The defendants, by their demurrer, attacked the sufficiency of the complaint and, among other grounds, contended that this action cannot be maintained because the plaintiffs do not come into Court with clean hands, and because there is no allegation that the constitutional rights of the plaintiffs have been impaired, or that there has been any unlawful discrimination against them.

After due deliberation, we have concluded that the ██ allegations of the complaint are sufficient to support the temporary restraining order which was heretofore granted. We think the complaint adequately alleged the impairment of the rights of the plaintiffs, that all necessary allegations were made with sufficient definiteness and certainty to permit the consideration of this action on its merits, and that there is no merit in the contention of the defendants that the plaintiffs do not come into Court with clean hands.

The expression "clean hands" means a clean record with respect to the transaction with the defendants themselves and not with respect to others. See *American Ass'n v. Innis,* 109 Ky., 595, 60 S. W., 388; 7 Words and Phrases, Permanent Edition, page 443. In the case just cited, it was held that the rule must be understood to refer to some misconduct in regard to the matter in litigation of which the opposite party can, in good conscience, complain in a Court of equity. To the same effect, see *Canfield v. Jack,* 78 Okl., 127, 188 P., 1040, and *Teuscher v. Gragg,* 136 Okl., 129, 276 P., 753, 66 A. L. R., 143. See also the discussion in 4 A. L. R., 58, and the cases cited in subsection (c) on that page, for authority for the proposition that the party to a suit complaining of a wrong must have been injured thereby in order to justify the application of the principle of "unclean hands" to the case of his opponent. See also the further discussion in 4 A. L. R., 106, sub-section (b). The demurrer of the defendants is therefore overruled in all particulars, including those grounds which we have not directly discussed, but all of which have been considered.

In considering this case upon its merits, it is necessary to keep in mind the provisions of Section 7233 of the Code of Laws of South Carolina for 1942, which provides: "The city councils and town councils of the cities and towns of the State shall, in addition·to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same. And the said city or town councils may fix fines and penalties for the violation thereof, not exceeding one hundred dollars fine or thirty days imprison-

ment; provided, that such rules, by-laws and ordinances shall not be inconsistent with the laws of this State; provided, further, that nothing herein contained shall be construed to repeal the law establishing local boards of health."

The first question for our determination under the above section of our Statutes is whether the City of Spartanburg had the power to adopt and enforce the ordinance in question under the existing law of the State with reference to the sale of beer and wine, it being the contention of the plaintiffs that since such beverages have by statute been declared to be non-alcoholic and non-intoxicating, the ordinance under consideration is void as being discriminatory and an unreasonable exercise of the police power of the municipality.

In the case of *Clegg et al. v. City of Spartanburg,* 132 S. C., 182, 128 S. E., 36, the sole question there raised was whether an ordinance of the City of Spartanburg prohibiting the maintenance and operation of public pool rooms within the city could be sustained as a valid exercise of the police power of the city. With reference to the Code section above quoted, this Court said at page 185 of the State report, 128 S. E., at page 37: "It is apparent that this grant of power for purposes of municipal legislation is as broad and comprehensive as it was within the power of the state to delegate. It is a grant of the sovereign police power of the state itself, limited alone (1) by the territorial confines of the municipality authorized to exercise it, and (2) by the proviso that legislation thereunder 'shall not be inconsistent with the laws of the state.' If so, subject to those limitations, the authority of the city to prohibit the maintenance and operation of public pool rooms for gain is as ample and plenary as the power of the state to prohibit such business. The only limitations upon this power of the state in that regard are the constitutional guaranties which safeguard personal liberty and private property."

The Court held that the ordinance under consideration in that case was within the police power of the city. See also

the case of *Fowler v. City of Anderson*, 131 S. C., 471, 473, 128 S. E., 410. See also the discussion under the title Constitutional Law in 16 C. J. S., page 546, § 178, and the textual discussion and cases cited thereunder in regard to Municipal Corporations in 37 Am. Jur., 962, Section 309. It must be borne in mind that the ordinance in question does not prohibit the carrying on of a legal business, but is only a regulation of that business under the police power of the city. Such power to regulate valid business enterprises, including those which have been licensed by the State, has been exercised by municipalities ever since their inception with reference to a variety of legal enterprises of a commercial nature, particularly with reference to business transactions on Sunday. Many kinds of businesses are permitted to be done on week days that are prohibited by municipal ordinances, and by statute, on Sundays, and similarly, many legitimate businesses can be regulated by municipal ordinances regardless of the license which may have been obtained and paid for. Any other rule would, in effect, grant judicial power to ministerial officers, and the granting of a license would become a judicial function.

In the case of *State v. Turner*, 198 S. C., 499, 18 S. E. (2d), 376, this Court recently said at page 506 of the State Report, 18 S. E. (2d), at page 379:

"The appellants assert that they were duly licensed to sell beer and wine. * * * In this connection it is contended that an act which the law authorizes or sanctions cannot be a public nuisance.

"The law of this State authorizes the sale of beer and wine by persons duly licensed. But the law does not and the Legislature never has authorized such persons to make sales in a way and under such circumstances as will create a public nuisance. Should we follow appellants' argument to its ultimate conclusion we would necessarily hold that *every activity or business which the State regulates or from which it receives a license tax would be immune* from resulting in a common nuisance, * * *." (Emphasis added.)

Continuing, this Court said further at page 507 of 198 S. C., 18 S. E. (2d), at page 379, in the same case: "It is true that the Legislature has declared (Act No. 198, 1939, Page 302) beer and wine containing not in excess of a specific alcoholic content to be non-alcoholic and non-intoxicating beverages, but, in our opinion, it is clear from a reading of the whole act that such definition was adopted for no purpose other than to regulate and control the sale of wine and beer, and to facilitate the enforcement of the license tax imposed."

Apparently the General Assembly has recognized that ■ places where beer and wine are sold could become a menace to the peace and good order of a community, and we are of the opinion that the Code section which we have quoted has for its purpose, among others, the enabling of municipal officers to protect the public against such possible evils, particularly with reference to the Sabbath day.

In the case of *Town of Dillon v. Saleeby,* 96 S. C., 442, 81 S. E., 153, the appellant was convicted of selling cider in violation of municipal ordinance. The evidence in that case showed that at the places where cider was sold, the rough element of the community congregated, became noisy and boisterous, and, in some cases intoxicated, and blocked the sidewalks in front of them, so that pedestrians had to get off them into the streets to pass by; that frequent arrests for drunkenness and disorderly conduct were made at such places. The appeal questioned the validity of the ordinance on the ground that council had no power to adopt it, and that it was unconstitutional. Mr. Justice Hydrick, speaking for this Court, quoted in his opinion a portion of the section of the Code which we have cited, and said at page 443 of 96 S. C., 81 S. E., at page 154: "Neither discussion nor citation of authority is necessary to show that the ordinance bears a substantial and reasonable relation to the purpose sought to be attained, to wit, the preservation of health, peace, order, and

good government within the town. It is therefore a proper exertion of the police power, and violates no provision of either the state or federal Constitution."

With reference to the power of municipal corporations to regulate, by appropriate ordinances, the carrying on of certain business occupations on Sunday, see 29 A. L. R., 397-427, 37 A. L. R., 575, and 30 Am. Jur., 440.

In the case of *McAbee v. Southern R. Co.*, 166 S. C., 166, 164 ·S. E., 444, 445, Mr. Chief Justice Blease, in delivering the opinion of· this Court, cited with approval the following language from 43 C. J., 218-220:

"The question as to whether or not a municipal ordinance or regulation is in conflict with the general law is sometimes difficult of solution, * * *. *In order that there be a conflict between a state enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other.* * * *If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.* * * *

" 'As a general rule, additional regulation to that of the State law does not constitute a conflict therewith. * * * *Merely because a municipal ordinance is not as broad as the statute does not render it so inconsistent as to make it void.'* (Italics added.)"

See also the case of *Cain v. Daly*, 74 S. C., 480, 55 S. E., 110.

We do not consider it necessary to discuss at length our conclusion that the ordinance under consideration is not discriminatory against these plaintiffs, in view of the fact that the ordinance is only regulatory, and not prohibitory, in its nature, and since it appears· that all dealers in beer and wine in the City of Spartanburg are treated alike, under similar circumstances, under the terms of the ordinance. There is no evidence in the case to the effect that these plaintiffs have been accorded treatment any

different from that of others in that city who sell beer and wine on Sunday. There is such a wealth of authority supporting this proposition that we will only cite the following decisions of this Court: *Johnson, Lytle & Co. v. Spartan Mills,* 68 S. C., 339, 47 S. E., 695; *Simmons v. Western Union Telegraph Co.,* 63 S. C., 425, 41 S. E., 521, 57 L. R. A., 607; *City Council of Charleston v. Benjamin,* 2 Strob., 508, 49 Am. Dec., 606; *City Council of Charleston v. Wentworth Street Baptist Church,* 4 Strob., 306; *Harrison et al. v. Caudle et al.,* 141 S. C., 407, 139 S. E., 482; *Duke Power Co. v. Bell, County Treasurer,* 156 S. C., 299, 152 S. E., 865; *State v. Hertzog,* 92 S. C., 14, 75 S. E., 374; *Porter v. Charleston & S. Ry. Co.,* 63 S. C., 169, 41 S. E., 108, 90 Am. St. Rep., 670; *City of Columbia v. Phillips,* 101 S. C., 391, 85 S. E., 963; *Crosswell & Co. Inc., v. Town of Bishopville,* 172 S. C., 26, 172 S. E., 698; *American Bakeries Co. v. City of Sumter,* 173 S. C., 94, 174 S. E., 919; *Thomas v. Spartanburg Ry., Gas & Electric Co.,* 100 S. C., 478, 85 S. E., 50; *Witt, Receiver, v. People's State Bank of S. C. et al.,* 166 S. C., 1, 164 S. E., 306, 83 A. L. R., 1068; *Atkinson v. Southern Express Co.,* 94 S. C., 444, 78 S. E., 516; *Henderson v. McMaster, Insurance Commissioner,* 104 S. C., 268, 88 S. E., 645; *Stewart v. Western Union Tel. Co.,* 93 S. C., 119, 76 S. E., 111; *State ex rel. Coney et al. v. Hicklin,* 168 S. C., 440, 167 S. E., 674.

An extended discussion of some of the general rules governing this case is found in 19 R. C. L., under the title Municipal Corporations. At page 798, Section 106, we find the following: "The preservation of the health, safety, welfare and comfort of dwellers in urban centers of population requires the enforcement of very different and usually much more stringent police regulation in such districts than are necessary in a state taken as a whole."

And on page 818, Section 123, of the same volume, we find: "A municipal corporation under its authorized police power may regulate any trade, occupa-

tion or business, the unrestrained pursuit of which might affect injuriously the public health, morals, safety or comfort; and in the exercise of this power, particular occupations may be excluded from certain parts of the city or may be required to be conducted within designated limits, and some may be so offensive or detrimental as to justify their total prohibition. It can make no difference that the trade had been lawfully established prior to the prohibitory ordinance and that it has become offensive solely on account of the growing up of the municipality about it."

And in 6 R. C. L., in Section 412, it is said on page 417: "* * * While there may be apparent discriminations, if, however, a statute treats all persons alike *under like circumstances and conditions* it cannot be said to deprive anyone of the equal protection of the laws." (Emphasis added.)

Furthermore, we find no merit in the contention of the plaintiffs that the enforcement of the ordinance will result in financial loss to them, as affecting the validity of the ordinance. In the case of *City Council of Charleston v. Wentworth Street Baptist Church, supra,* it was held that in this State the law will never, by any construction, advance a private interest to the destruction of a public interest; but, on the contrary, that it will advance the public interest, so far as it is possible, though it be to the prejudice of a private one. In this same connection, see 16 C. J. S., Constitutional Law, page 556, § 188.

We think it is clear from the affidavits submitted by the defendants, the gist of which we have stated in this opinion, that the ordinance in this case was not adopted capriciously or arbitrarily in the light of the authorities which we have cited. We have read with care the affidavits submitted by the plaintiffs, but we do not think they overcome the strong evidence propounded by the defendants. We do not think that the plaintiffs have been deprived of any of their constitutional rights.

For the reasons which we have given, the temporary injunction heretofore granted is dissolved herewith, and a permanent injunction is refused, and the complaint is dismissed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE, concur.