### 16869

LOMAX v. CITY OF GREENVILLE ET AL.

(82 S. E. (2d) 191)

Messrs. *James M. Richardson* and *J. Wiley Brown,* of Greenville, *for Appellant,*

Messrs. *T. C. Callison, Attorney General, Julian L. Johnson, Assistant Attorney General* and *L. M. Cantrell,* of Co-

lumbia, *for Respondents;*

May 13, 1954.

LEGGE, Justice.

Appellant, an employee of the Police Department of the City of Greenville, was accidentally injured while carrying a message from a prisoner in the City jail to the prisoner's wife in a distant section of the City. His claim for compensation under the South Carolina Workmen's Compensation Law, Code 1952, Title 72, was allowed by the Hearing Commissioner, whose award was affirmed by the full Commission. The Circuit Court reversed the award upon the ground that the accident had not arisen out of and in the course of the employment; hence this appeal.

Appellant is a negro, fifty-nine years of age, and at the time of the accident had been employed as janitor by the Police Department of the City of Greenville for approximately thirty years. Actually, his work included many duties not strictly those of a janitor, among them the running of errands and carrying of messages for prisoners.

J. H. Jennings, the Chief of Police, testified that the three lieutenants of police were in charge of the hiring and firing of janitors and had full and complete authority to direct their activities.

O. T. Lowe, the Lieutenant of Police under whom the appellant worked, testified in regard to appellant's duties as follows:

"Well, he has got so many I will have to kind of omit some. I don't believe they should call him a janitor; they ought to have another name for him. His chief duties are to get the building clean, feed the prisoners, see that the prisoners are taken care of. See if there are any sick ones, if any hang themselves back there—if they do, he has to see about that. He has also been instructed down there, if it's nothing except a misdemeanor case—no investigation—if they want to send a message out, if they have no telephone, he has permission to make that trip; if they have a telephone, he has permission to bring them to do that. If I have time I go get them and bring them out and let them make a telephone call."

To quote further from Lieutenant Lowe's testimony:

"Q. If he has a request by a prisoner to get food or drink or to notify somebody, has he authority to do that? A. Yes.

Q. Who gave him that authority? A. I did.

Q. On March 29th of this year so far as you are concerned as Lieutenant of Police, did this janitor, Chester Lomax, have authority, without saying anything to you, to go to the Green Line Section for the purpose of communicating with some person at the request of a prisoner? A. Yes, sir."

On the day of the accident, appellant's hours of duty were from 3:00 p. m. to 11:00 p. m. About 6:00 p. m., after he had served the evening meal to the prisoners, one of them asked him to go to his home in the "Green Line" section of the City and tell his wife to come and get him out of jail. It was while engaged in that mission that appellant was injured by being struck by an automobile.

Appellant testified that among the duties assigned to him, and which he had performed for many years, was the job of running errands for prisoners, within the limits prescribed by the Police Department. In some instances he would carry messages on foot; if the distance was great, he would ride the public trolley, as he did on the occasion of his injury. He

testified that for such errands he made no charge; that sometimes he would be given a tip; but that such services were not contingent upon his receiving a tip, being part of his duty. In this particular instance, the prisoner had told him that he would give him a dollar when he got back.

Several other officials of the Greenville Police Department testified to the effect that it was the policy of that department to assist in every way possible persons held in custody, and that the janitors were under general orders to run errands for the prisoners, subject to certain limitations not pertinent to this case.

The respondents offered no testimony, and the Industrial Commission, in awarding compensation, held that the evidence showed that for many years it had been the practice and policy of the Greenville Police Department to have its janitors run errands for persons held in custody, that such errands involved the facing of street hazards, and that appellant's injuries had occurred as the result of an accident while in the performance of work for his employer that he was employed to do or which he could reasonably have been expected to do in the furtherance of his employer's interests.

In reversing the award of the Industrial Commission, the Circuit Court held that although appellant at the time of his injury was engaged in the performance of services under the general orders of his superiors and with their full knowledge and acquiescence, the City of Greenville had no power to perform, or direct the performance of, such acts; and that the award could not be sustained on the ground of equitable estoppel, that doctrine being inapplicable against municipal corporations.

The exceptions, four in number, present three questions, namely:

1. Did the City of Greenville have power to employ the appellant, or to authorize his employment, for the kind of service that he was performing at the time of the injury?

2. Did the accident arise out of and in the course of appellant's employment?

3. Is the doctrine of equitable estoppel applicable against the City of Greenville in this case?

Whether at the time of his injury the appellant was acting pursuant to, or in violation of, his orders, was an issue of fact which was resolved by the Commission in favor of the appellant. Such finding, being based upon substantial evidence, is binding upon the courts.

Code 1952, § 72-356; *Ballenger v. Southern Worsted Corp.,* 209 S. C. 463, 40 S. E. (2d) 681; *White v. Carolina Power & Light Co.,* 215 S. C. 25, 53 S. E. (2d) 872; *Buff v. Columbia Baking Co.,* 215 S. C. 41, 53 S. E. (2d) 879.

There is no suggestion in the record that the Police Department, in prescribing the duties of the appellant, acted contrary to any ordinance or regulation of the City of Greenville; nor does the record suggest that resistance of appellant's claim is based upon any ground other than that his employment for the service that he was performing at the time of his injury was beyond the corporate power.

The basic issue here involved is, therefore, posed in the first of the three questions above stated. If that question be answered in the affirmative, consideration of the other two will become unnecessary.

It is well settled that municipal corporations have and can exercise only their inherent powers and such as have been conferred upon them by the legislature in express terms or by reasonable implication; and that, as a general rule, the grant of power will be strictly construed against the municipality. *Luther v. Wheeler,* 73 S. C. 83, 52 S. E. 874, 4 L. R. A., N. S., 746; *Douglas v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49 L. R. A., N. S., 958.

It by no means follows, however, that within the sphere of the power so granted the municipal authorities have no

discretionary power. *Simons v. City Council of Charleston,* 181 S. C. 353, 187 S. E. 545.

"Where power over a particular subject matter has been delegated to the municipal corporation by the legislature, without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities, and as long as it is exercised in good faith and for a municipal purpose, the courts have no ground upon which to interfere." 37 Am. Jur. "Municipal Corporations", § 117, page 732.

Moreover, in considering the nature, extent and purpose of the exercise of police powers by municipalities, it must be borne in mind that, subject to constitutional restrictions, different police regulations may be required in different municipalities, depending on local conditions. *Clegg v. City of Spartanburg,* 132 S. C. 182, 128 S. E. 36, 37.

The rule that grants of police powers to municipalities are to be strictly construed has been generally invoked in cases involving municipal ordinances regulating or restricting the activities of the citizens. The reason for the rule is more cogent in such cases than in the case at bar.

As far back as the Act of the General Assembly ratified December 17, 1831, whereby the Village of Greenville was incorporated, the intendant and wardens were given power "to ordain and establish all such rules, by laws and ordinances respecting the streets, ways, markets and police of said village, as shall appear to them proper, for the security, welfare, and convenience of said village, and for preserving health, peace, order and good government within the same". VI Stat. at Large 434.

(It may be noted, as a matter of historical interest, that by two earlier Acts, Sections 27-30 of the Act of December 20, 1823, and Sections 23-25 of the Act of December 18, 1824, VIII Stat. at Large 331, 338, 339, the village of Greenville was declared to be a "town corporate, by the name of the Town of Greenville"; but these Acts related

only to streets, lanes and alleys, to the erection of a market, and to the licensing of certain businesses, and they contained no general grant of police power.)

Section 47-61 of the 1952 Code reads as follows:

"The city and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, bylaws, regulations and ordinances, not inconsistent with the laws of this State, respecting the roads, streets, markets, police, health and order of such cities and towns or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns or for pre-serving health, peace, order and good government within them. * * *"

In construing this statute, then Section 7233 of the 1942 Code, this Court, in the case of *Clegg v. City of Spartanburg, supra,* said:

"It is apparent that this grant of power for purposes of municipal legislation is as broad and comprehensive as it was within the power of the state to delegate. It is a grant of the sovereign police power of the state itself, limited alone (1) by the territorial confines of the municipality authorized to exercise it, and (2) by the proviso that legislation thereunder 'shall not be inconsistent with the laws of the state.' " See also *Arnold v. City of Spartanburg,* 201 S. C. 523, 23 S. E. (2d) 735.

In the case at bar, it is immaterial that the duties of the appellant were prescribed by orders of the lieutenant of police, and not by ordinance of the City of Greenville. The issue here is concerned with the power of the municipality to prescribe those duties, not with the means of exercising that power. If the municipality had the power to direct the performance of the duties in which appellant was engaged at the time of his injury, such direction was properly given

through the police officials by whom he was employed. 37 Am. Jur. "Municipal Corporations", § 118, page 733.

It appears from the uncontradicted testimony that the City of Greenville, acting through its Police Department, has considered it a matter of public concern that a person imprisoned in the city jail for a misdemeanor should be permitted to communicate with his relatives or friends, to the end that bail might be promptly arranged, and that for many years the appellant and other janitors in the Police Department had been under general orders to act as messengers for that purpose where telephone communication was not available. The wisdom or unwisdom of such a policy is not for determination by this Court. We are concerned only with the question of the City's power to furnish or authorize such service. Nor are we here concerned with the power of the City, through its Police Department, to direct or permit the janitors to run errands for prisoners for other purposes, such as the purchase of food, for the appellant was not on such mission.

In our opinion it was within the police power of the City of Greenville, acting through its Police Department, to authorize and direct the appellant to perform the duties in which he was engaged at the time of his injury, and that the Circuit Judge erred in holding otherwise. The judgment of the Circuit Court is reversed, and the award of the Industrial Commission reinstated.

STUKES, TAYLOR and OXNER, JJ., and LITTLEJOHN, Acting Associate Justice, concur.